UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

HUTCH ENTERPRISES, INC.,

                             Plaintiff,

v.

THE CINCINNATI INSURANCE COMPANY,

                             Defendant.
_____

**REPORT AND RECOMMENDATION**

16-CV-01010-WMS-JJM

        Before the court is defendant The Cincinnati Insurance Company's motion for summary judgment [16],[1] which has been referred to me for a Report and Recommendation [20]. Having reviewed the parties' submissions [16, 17, 23, 24], I recommend that the motion be denied, without prejudice to renewal at a later date.

**BACKGROUND**

        On November 25, 2016, plaintiff Hutch Enterprises, Inc. commenced this action in State of New York Supreme Court, County of Niagara, seeking to recover under a commercial insurance policy issued by Cincinnati for storm damage to several of its properties in Western New York on November 25, 2014. Complaint [1-1]. On December 19, 2016 Cincinnati removed the action to this court based on diversity of citizenship [1]. It answered the complaint on December 22, 2016 [6] and moved for summary judgment on January 24, 2017 [16], prior to any discovery in this action.

        In moving for summary judgment, Cincinnati argues that "1) by failing to provide its consultant, The Insurance Doctor, for an EUO [examination under oath], the insured, Hutch,

---

[1]     Bracketed references are to the CM/ECF docket entries.

breached the policy's duty to cooperate and EUO provisions; 2) by failing to provide the requested documentation of the alleged loss and its cause, Hutch breached the policy's duty to cooperate; 3) there is no coverage based on the policy's Defects, Errors and Omissions exclusion, and the ensuing loss provision does not restore coverage because the loss was directly caused by the excluded loss; 4) the Building Interiors Limitation also applies to bar coverage here; and 5) in addition, the Miscellaneous Causes of Loss exclusion (wear and tear, rust or hidden or latent defect) bars coverage. Except as to Point Four, anyone of these points is sufficient, by itself, for this Court to grant complete summary judgment to Cincinnati." Cincinnati's Memorandum of Law [16-1], p. 5 of 23. The relevant facts will be discussed only to the extent necessary to resolve this motion.

## ANALYSIS

### A.  The Standard for Summary Judgment

"A motion for summary judgment may properly be granted . . . only where there is no genuine issue of material fact to be tried, and the facts as to which there is no such issue warrant the entry of judgment for the moving party as a matter of law." Rogoz v. City of Hartford, 796 F.3d 236, 245 (2d Cir. 2015). "In reviewing the evidence and the inferences that may reasonably be drawn, the court *may not make credibility determinations or weigh the evidence* . . . . In sum, summary judgment is proper only when, with all permissible inferences and credibility questions are resolved in favor of the party against whom judgment is sought, there can be but one reasonable conclusion as to the verdict . . . *i.e.*, it is quite clear what the truth is". Kaytor v. Electric Boat Corp., 609 F.3d 537, 545-46 (2d Cir. 2010) (emphasis in original).

B.  **Compliance with Local Rules**

Cincinnati argues that Hutch has failed to comply with this court's Local Rule 56(a)(2), governing responses to statements of undisputed material facts. Cincinnati's Reply [24], pp. 7 of 15, *et seq*. While it accuses Hutch of submitting "a massive amount of irrelevant documents as purported exhibits to its Opposition" (id., p. 9 of 15), I find many of the documents submitted by Hutch to be quite relevant to the motion.

Therefore, notwithstanding Hutch's failure to fully comply with Local Rule 56(a)(2) (and with the admonition that Hutch should be more careful in the future), I will exercise my discretion to consider the entire record in deciding this motion. *See* Holtz v. Rockefeller & Co., 258 F.3d 62, 73 (2d Cir. 2001) ("[a] district court has broad discretion to determine whether to overlook a party's failure to comply with local court rules . . . . [W]hile a court is not required to consider what the parties fail to point out in their Local Rule . . . statements, it may in its discretion opt to conduct an assiduous review of the record even where one of the parties has failed to file such a statement").

C.  **The Duty of Cooperation**

Section D(3)(a)(8) of Cincinnati's insurance policy requires Hutch to "cooperate with [Cincinnati] in the investigation or settlement of the claim". [17-2], p. 63 of 140. In order to disclaim coverage based upon an insured's failure to cooperate, "[a] heavy burden of establishing noncooperation is on the insurer, which must demonstrate that: (1) it acted diligently in seeking to bring about the insured's cooperation; (2) the efforts it employed were reasonably calculated to obtain the insured's cooperation; and (3) the attitude of the insured, after his cooperation was sought, was one of willful and avowed obstruction." Emigrant Mortgage Co. v. Washington

Title Insurance Co., 78 A.D.3d 1112, 1114 (2d Dept. 2010). "When the insured's failure to fulfill his obligations under an insurance policy is indicative of a pattern of non-cooperation for which no reasonable excuse for noncompliance has been proffered . . . his conduct is properly deemed willful." Rosenthal v. Prudential Property & Casualty Co., 928 F.2d 493, 494-95 (2d Cir. 1991).

However, "[g]enerally speaking, summary judgment is not a tool well suited to determining willfulness". Close-Up International, Inc. v. Berov, 382 Fed. App'x 113, 117 (2d Cir. 2010) (Summary Order). For the following reasons, I cannot conclude as a matter of law that Hutch has willfully failed to cooperate with Cincinnati.

### 1.    The Examination Under Oath ("EUO")

"The insured's willful failure to appear at an EUO constitutes a material breach of the cooperation clause and a defense to an action on the policy." Rosenthal, 928 F.2d at 494. Hutch did not "willfully fail to appear" at an EUO. Its owner, John Hutchins, testified at the EUO on August 7, 2015. Hutchins Affidavit [23-1], ¶6. He states that he "answered all of Defendant's questions, to the best of his knowledge, information and belief. In good faith, I provided the name of the entity who I believed would have information regarding each respective question posed by Defendant." Id., ¶7; [17-3].

Cincinnati argues that Mr. Hutchins "repeatedly declined to provide substantive answers by deferring to the alleged knowledge of the pertinent facts held by the public adjuster he had retained, The Insurance Doctor" (Kompf Affidavit [17-1], ¶3), and that "Hutch and its consultant, The Insurance Doctor, have refused several requests for an EUO of The Insurance Doctor". Id., ¶4. However, both Hutch and The Insurance Doctor repeatedly asked Cincinnati to

cite authority requiring The Insurance Doctor to submit to an EUO, and no response was forthcoming.

For example, on August 19, 2015, Vincent LoBracco, loss consultant for The Insurance Doctor, e-mailed Cincinnati's attorney, Krupa Shah, asking her to "please point out the policy language that supports your claim as 'pursuant to the policy' to request the examination under oath of a nondefined insured" ([23-4], p. 4 of 14). Cincinnati failed to identify any such language. On November 23, 2016, Hutch's attorney, Jennifer Van Voorhis, wrote to Ms. Shah and her co-counsel, Vincent Velardo, stating that "[p]ursuant to my earlier correspondence, including my letter of September 16, 2015, the Loss Conditions of the Policy clearly does not require the EUO of anyone other than the insured. We requested you provide either New York law or the policy provisions in the Hutch policy of insurance which required any other individuals to appear for an EUO and did not receive a response. As such, we will produce Mr. LoBracco for deposition once we file suit [*sic*] and discovery commences." [23-6], p. 3 of 175.

Section D(3)(b) of Cincinnati's policy entitles it to "examine any insured under oath", ([17-2], p. 64 of 140), and defines Hutch as the named insured (id., p. 2 of 140). "Generally, a named insured is subject to an insurer's demand for an examination under oath", 3 Couch on Insurance (Third Ed.), §196:6, and there is "no prevailing view as to the applicability of EUOs to public adjusters". Keala Ede, "The Power to Compel Submission of 'Others': Are Public Adjusters Subject to Examination Under Oath Provisions?", The Brief, Spring 2009, Vol. 38 No. 3, at 50-51. [2] *See*, *e.g.*, Palace Cafe v. Hartford Fire Insurance Co., 97 F.2d 766, 768–69 (7th Cir. 1938) ("[t]he policies provide for examination of the assured. This includes only its

---

[2] Quarterly Journal of the ABA Tort Trial & Insurance Practice Section (accessible on Westlaw).

corporate agents, not an independent contractor or attorney"); Florida Gaming Corp. v. Affiliated FM Insurance Co., 502 F. Supp. 2d 1257, 1261 (S.D. Fla. 2007) ("given the language of the policy, which authorized the examination of 'the insured,' an examination of the insured's adjuster . . . does not appear to have been contemplated"); El Dorado Towers Condominium Association, Inc. v. QBE Insurance Corp., 717 F. Supp. 2d 1311, 1319–20 (S.D. Fla. 2010) ("although undoubtedly the examination of Plaintiff's public adjuster would have aided QBE's investigation, I decline to conclude that Plaintiff's failure to submit its public adjuster for examination under oath constitutes a material breach of the Policy").

Accordingly, and particularly in light of Cincinnati's failure to respond to Hutch's request for authority supporting its position, Hutch's refusal to produce The Insurance Doctor for an EUO can hardly be considered "willful" as a matter of law.

### 2. Production of Documents

Cincinnati argues that "by failing to provide the requested documentation of the alleged loss and its cause, Hutch breached the policy's duty to cooperate". However, in order to prevail on this theory, it must show that Hutch "engaged in an unreasonable and willful pattern of refusing to . . . supply material and relevant documents". Avarello v. State Farm Fire & Casualty Co., 208 A.D.2d 483, 483 (2d Dept. 1994).

Cincinnati has not established as a matter of law that Hutch engaged in such a pattern of refusal. *See* Hutchins Affidavit, ¶¶9-10 and attached exhibits. On August 19, 2015, Mr. LoBracco e-mailed, Ms. Shah, stating: "Presently, the insured has fully cooperated as compliance to the post-loss conditions. It's my understanding that you have additional questions

to determine coverage. To expedite this claim, please provide us a list of questions that will help you and your client conclude his investigation". [23-4]. p. 6 of 14. On August 26, 2015 he again e-mailed her, stating: "We have provided your office with repair estimates, incurred roof repair invoices and EMS water extraction invoices. Please send me in writing a list of additional items you'll need to determine coverage of this loss." Id., p. 10 of 14. "Nevertheless, defendant simply continued to make generalized requests for information and documents, which it already possessed." Hutchins Affidavit [23-1], ¶10. Moreover, the record does not indicate that Cincinnati ever notified Hutch that it was declining coverage based on failure to cooperate.

"The question of what amounts to a failure to assist and cooperate depends upon the circumstances and is usually a question of fact. It becomes a question of law only when the facts are undisputed or when only one inference can reasonably be drawn therefrom." 70A N.Y. Jur. 2d, Insurance §2125. Because Cincinnati has failed to demonstrate that Hutch's failure to cooperate is the only inference that can be reasonably be drawn from the record, it is not entitled to summary judgment on that basis.

## C. Existence of Coverage Under the Policy

Cincinnati next argues that, irrespective of Hutch's alleged failure to cooperate, the damage to Hutch's properties is excluded from coverage under the policy. Kompf Affidavit [17-1], ¶¶8-13; Cincinnati's Memorandum of Law [16-1], Points III, IV. Cincinnati bases this argument entirely upon the April 13, 2015 report of RJR Engineering, P.C. [17-4], which concluded that "the damage noted was not *likely* to have been caused by the wind conditions which occurred on or about November 25, 2014", and that "[t]he leaks were *likely* caused by improper flashing and sealing methods . . . and also by a general lack of maintenance on many of

the roofs". Id., pp. 24, 29 of 58 (emphasis added). However, because "likely" does not mean "definitely",[3] Cincinnati has not shown that "it is quite clear what the truth is". Kaytor, 609 F.3d at 546.

Moreover, RJR Engineering's conclusions are extensively criticized by Mr. LoBracco in his August 26, 2015 e-mail ([23-4], pp. 8-10 of 14), and Hutch has also submitted reports by Roof Leak Detection Company, Inc. ("RLDC") [23-7] which contradict RJR Engineering's conclusions.[4] In reply, Cincinnati argues that "RLDC is not an engineer . . . . Thus, RLDC's opinions are insufficient to refute those of Cincinnati's Engineer". Cincinnati's Reply [24], p. 14 of 15.

However, the fact that RLDC is not an engineer cannot lead me, at this early stage of the case, to conclude that its opinions must be discounted entirely.[5] *See* Schwartz v. Caravan Trucking, L.L.C., 2011 WL 43231, *1, n. 1 (E.D.N.Y.), adopted in relevant part, 2011 WL 703925 (E.D.N.Y. 2011) ("[d]efendants provided only boilerplate objections to Coulon's qualifications, focusing mostly on the fact that Coulon is not an engineer. However, Coulon is

---

[3] *See*, *e.g*., Schwent v. Natural Resource Conservation Service, 2017 WL 176220, *2 (W.D. Wash. 2017) ("[i]t appears likely, though not definite").

[4] I note that neither the RJR Engineering report nor the RLDC reports are submitted in proper evidentiary form, *i.e.*, accompanied by an affidavit from their authors. However, since neither party objects to their consideration on that basis, neither will I. "It is well established . . . that even inadmissible evidence may properly be considered on summary judgment if it may reasonably be reduced to admissible form at trial." Cole v. Rogers, 2017 WL 1157182, *3, n. 2 (E.D.N.Y.), adopted, 2017 WL 1155002 (E.D.N.Y. 2017). *See also* Perpall v. Pavetek Corp., 2017 WL 1155764, *9 (E.D.N.Y. 2017) ("[a]t the summary judgment stage, we do not focus on the admissibility of the evidence's form. We instead focus on the admissibility of its contents . . . . Here, there is nothing to suggest that Defendants would not be able to obtain for trial the necessary authenticating testimony").

[5] Whether the testimony of RLDC (or RJR Engineering, for that matter) will ultimately satisfy the admissibility requirements of Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993) is a question for another day. However, absent the benefit of further discovery, I cannot conclude at this point that it does not.

not attempting to testify as to a defect in manufacturing or design, which fields more readily lend themselves to experts trained specifically in engineering. Moreover, Defendants are free to raise this issue on cross-examination"). *See also* McCullock v. H.B. Fuller Co., 61 F.3d 1038, 1043 (2d Cir. 1995) ("Fuller's quibble with Woolley's academic training . . . and his other alleged shortcomings . . . were properly explored on cross-examination and went to his testimony's weight and credibility - not its admissibility"); Tuf Racing Products, Inc. v. American Suzuki Motor Corp., 223 F.3d 585, 591 (7th Cir. 2000) ("[t]he notion that Daubert . . . requires particular credentials for an expert witness is radically unsound. The Federal Rules of Evidence, which Daubert interprets rather than overrides, do not require that expert witnesses be academics or PhDs . . . . Anyone with relevant expertise enabling him to offer responsible opinion testimony helpful to judge or jury may qualify as an expert witness").

Given the parties' conflicting submissions as to the cause of the damage, I conclude that Cincinnati has failed to demonstrate its entitlement to summary judgment at this time. Therefore, I recommend that its motion be denied, without prejudice to renewal once the record is more fully developed. *See* In re Megan-Racine Associates, Inc., 180 B.R. 375, 380 (Bk. N.D.N.Y. 1995) ("[t]he trial court may prefer to reserve judgment on the motion or deny the motion until all the evidence is presented and a more complete factual record is formed"); In re Breast Implant Cases, 942 F. Supp. 958, 961 (E.D.N.Y. 1996) ("[i]n cases where additional information is required to adequately pass on a motion for summary judgment, the practice has been to deny the motion, with leave to renew, allowing further discovery and development of evidence").

## CONCLUSION

For these reasons, I recommend that Cincinnati's motion for summary judgment [16] be denied, without prejudicial to renewal at a later date. Unless otherwise ordered by Judge Skretny, any objections to this Report and Recommendation must be filed with the clerk of this court by April 26, 2017. Any requests for extension of this deadline must be made to Judge Skretny.

A party who "fails to object timely . . . waives any right to further judicial review of [this] decision". <u>Wesolek v. Canadair Ltd.</u>, 838 F. 2d 55, 58 (2d Cir. 1988); <u>Thomas v. Arn</u>, 474 U.S. 140, 155 (1985). Moreover, the district judge will ordinarily refuse to consider de novo arguments, case law and/or evidentiary material which could have been, but were not, presented to the magistrate judge in the first instance. <u>Patterson-Leitch Co. v. Massachusetts Municipal Wholesale Electric Co.</u>, 840 F. 2d 985, 990-91 (1st Cir. 1988).

The parties are reminded that, pursuant to Rule 72(b) and (c) of this Court's Local Rules of Civil Procedure, written objections shall "specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for each objection . . . supported by legal authority", and must include "a written statement either certifying that the objections do not raise new legal/factual arguments, or identifying the new arguments and explaining why they were not raised to the Magistrate Judge". Failure to comply with these provisions may result in the district judge's refusal to consider the objections.

Dated: April 12, 2017

    /s/ Jeremiah J. McCarthy
    JEREMIAH J. MCCARTHY
    United States Magistrate Judge